## WALKEEN LEWIS MILLINERY COMPANY, Respondent, v. JOHNSTON, Appellant.

### St. Louis Court of Appeals, May 26, 1908.

1. **EVIDENCE: Admissions of Agent: "Intentions" of Principal.** In an action by attachment on the ground that the defendant was about to move out of the State with intent to change her domicile, the admissions and statements of the defendant's agent while in charge of her business, concerning the business of which he had charge, were part of the *res gestae* and admissible in evidence, but it was not admissible for such agent to testify as to the *intentions* of the defendant.

2. ———: **Instruction upon Issue Unsupported by Evidence.** In an action by attachment on the ground that the defendant had fraudulently conveyed her property, an instruction authorizing a verdict for the plaintiff on the plea in abatement, provided a certain deed of trust had remained unsatisfied after it was paid off, was improper where there was no evidence upon the subject which would overcome the presumption of good faith in the transaction.

Appeal from Barry Circuit Court.—*Hon. F. C. Johnston*, Judge.

REVERSED AND REMANDED.

*Mayhew & Sater* and *Col. Cloud* for appellant.

(1) Instruction number 5 is clearly erroneous. This instruction tells the jury that if Sig Solomon was the agent of defendant, then any admissions or state-

ments made by Solomon concerning the disposition of said property and the intentions of defendant become the admissions and statements of defendant.    The record shows that Solomon was the agent of defendant to sell certain real estate, not to publish defendant's intentions of leaving the State.    Lumber Co. v. Kreeger, 52 Mo. App. 422; Helm v. Railroad, 98 Mo. App. 425; Mechem on Agency, sec. 714.    (2)   The declaration of an agent to be admissible against the principal must be part of the *res gestae*.    McDermott v. Railroad, 73 Mo. 518; King v. Insurance Co., 101 Mo. App. 172.    Declarations of a real estate broker as to his principal intending to leave the State do not bind the principal.    Mechem on Agency, sec. 866; Brauckman v. Leighton, 60 Mo. App. 38.    (3)   There was no evidence upon which to base instruction number 5.    The court sustained objections made by defendant to testimony of witness Peel as to declarations made by Solomon that defendant was going to leave the State.    Culberson v. Railroad, 50 Mo. App. 657; Marr v. Bunker, 92 Mo. App. 657.    (4)   Instruction number 8 is erroneous.    There can be no fraudulent disposition of the homestead within the meaning of the attachment law.    Davis v. Land, 88 Mo. 436; Bank v. Guthrey, 127 Mo. 189; Osborne v. Evans, 185 Mo. 509; Stam v. Smith, 183 Mo. 469.

*Peel & Sizer* and *David H. Kemp* for respondent.

The conversation made by the appellant's agent as to her intending to leave the State was by the court excluded instruction number 5, complained of by the appellant is the law, as is evidenced by the language of the court in the case of the State to use v. O'Neil, 151 Mo. 89.

NORTONI, J.—This is an attachment suit.    The defendant owned and maintained a millinery establishment in the town of Monett.    She became involved to the extent of a few hundred dollars for goods purchased

on account of her stock in trade. The accounts were overdue and she was being pressed for settlement when she conveyed a piece of real estate owned by her in that town, to one Wilson under such circumstances as to excite suspicion. An attachment proceeding was filed and the property levied upon while the deed was being held in escrow by the First National Bank, and the title to the property undergoing examination. The bank was also summoned as garnishee, as will appear by reference to the case of Walkeen Millinery Co. v. Johnson —First Nat. Bank, 130 Mo. App. 325; 109 S. W. 847.

The grounds alleged for the attachment are five in number, as follows: That the defendant is about to remove her property or effects out of this State with intent to defraud, hinder or delay her creditors. That the defendant is about to remove out of this State, with the intent to change her domicile. That the defendant has fraudulently conveyed or assigned her property or effects so as to hinder or delay her creditors. That the defendant is about fraudulently to conceal, remove or dispose of her property or effects so as to hinder or delay her creditors.

A plea in abatement was filed, whereby each of the several grounds of attachment mentioned was traversed. In support of the attachment, the evidence tended to prove that defendant, through her agent, Sig. Solomon, sold the real estate mentioned, in the city of Monett, and executed a warranty deed therefore to one Wilson, which was deposited in the bank until abstracts of title could be examined. The transaction consumed a couple of days. Mr. Wilson, the purchaser, deposited a check for about $1,600 with the same bank, as the purchase price of the property. Instructions were given to deliver the draft to defendant's agent, Solomon, upon completion of the abstract showing satisfactory title. A couple of days thereafter, when the abstract had been completed and the title pronounced satisfactory, the

bank delivered to defendant's agent, Solomon, the check of its assistant cashier for the amount of the purchase price.    Defendant's agent acting under her instructions, immediately assigned this check to her minor daughter, Eddy Johnston, and deposited the same in the First National Bank to the account of such minor daughter, and delivered the certificate of deposit to defendant.    On the same or following day, the daughter, Eddy, signed her name to a check for $600 which was delivered to the agent, Solomon, for the purpose of making a loan on real estate.    Solomon negotiated the loan, taking a note and deed of trust securing the same in his own name, assigned the note in blank, and delivered it to the defendant.    The attachment suit having been filed in the meantime, the writ was served upon defendant immediately following these transactions, probably the following day.    It also appeared in evidence that defendant, during the month of January previous, had executed a deed of trust on the same piece of property in favor of her daughter, Laura Johnston, purporting to secure to her the sum of $1,700.    This deed was duly recorded.    Afterwards, upon the consummation of the sale of the property to Mr. Wilson, the deed was released on the margin of the record.    There was also evidence that although defendant had given many promises to pay the indebtedness, she finally rejected an offer to settle at fifty cents on the dollar.    There was slight evidence tending to prove the defendant had expressed an intention to remove out of the State.    Her sister-in-law, Mrs. Billett, testified that shortly prior to the transactions mentioned, the defendant expressed a purpose to go to Parsons, Kansas, and accept employment.    She said she could not say as to whether the defendant's purpose was to remain there temporarily or permanently.    Although an objection was sustained thereto at one point in the first portion of his examination, it appears thereafter a witness, Mr. Peel,

was permitted to testify that defendant's agent told him on the street, just after the sale of the property, that defendant intended to pay her debts and remove to Kansas. The jury returned a verdict sustaining the attachment on all the grounds alleged in the affidavit. The court having given judgment thereon, defendant appeals.

It is insisted, the evidence is insufficient to support the verdict. A perusal of the facts stated, discloses that this argument is entirely without merit unless it be with respect to the two grounds alleged relating to the intention of the defendant to remove out of the State. After excluding the evidence of the witness Peel as to what defendant's agent, Solomon, said to him about defendant's intention to remove from the State, which was hearsay and incompetent, there is indeed slight evidence in support of the two grounds of attachment predicated on this idea. When considered in connection with the other facts and circumstances in the case, the testimony of Mrs. Billett, to the effect that defendant had expressed a purpose to go to Kansas to accept a position, and that witness would not say whether the defendant intended to make her residence there temporary or permanent, we entertain no doubt that the question of defendant's intention thereabout was for the jury. There is enough in the facts and circumstances in proof, together with Mrs. Billett's statement, to produce a reasonable inference in aid of the verdict to the effect that defendant was about to remove her property or effects out of the State with an intent to defraud, hinder or delay her creditors, and that she was about to remove out of the State with intent to change her domicile.

Among other things, the court instructed the jury on behalf of plaintiff, as follows:

"The court instructs the jury that if you believe from the evidence that Sig. Solomon was the agent for

the defendant in the sale of her property in question, then any admissions or statements made by the said Solomon concerning the disposition of said property and the intentions of the defendant, if any have been proven, become the admissions and statements of the defendant, and any fraudulent acts committed by the said Solomon in any way connected with the sale or disposition of the proceeds of the sale of any real estate of the defendant, if any have been proven, become the fraudulent acts of the defendant and she will be held responsible therefor however destitute of any knowledge on her part."

It appearing from the evidence that all of the admissions, statements and acts referred to in this instruction, were admissions, statements and acts of the agent while executing the authority of his agency; that is, while actually engaged in selling and handling the proceeds of the sale to which his agency related; the instruction is no doubt proper enough in this case, except with respect to that portion which deals with the matter of the "intentions of defendant." Although Solomon, the agent, might bind the defendant by his admissions, statements and acts, which are parcel of the *res gestae* it is certain that he would have no right immediately thereafter, or at any other time, to bind her by saying to the witness Peel that she intended to remove to Kansas. Whatever the intentions of the defendant with respect to removing out of the State may have been, it was no part nor parcel of the authority of her real estate agent to commit her as an admission against interest by his statements in that behalf. Witness Peel testified that he talked with Solomon on the street. Solomon told him he had sold the defendant's property and that she was going west in about two weeks. The court overruled an objection and permitted the statement to be made. The witness repeated the statement a second time. A second objection thereto

was sustained by the court. Afterwards, on cross-examination of the same witness, he volunteered and recited that he was informed by Solomon the defendant "was selling her property and aimed to leave the State." Even though defendant's right to complain on account of the admission of such incompetent evidence by the voluntary statement of the witness, is waived by their failure to object and except thereto, it was error for the court to treat with this item of evidence as it did in its instruction number 5, over the objection and exception of the defendant to the instruction. In that instruction, the court told the jury that if Solomon was the agent for the defendant for the sale of her property, then any admission or statement made by Solomon concerning the disposition of the property *and the intentions of the defendant* became admissions and statements of the defendant. The expression of Solomon with respect to the intentions of defendant referred to in the instruction, could have related only to what he had said about her removing from the State, for nothing appears in the evidence indicating that he had attempted to impart defendant's intentions on any other matter. In order for the statement of an agent to commit his principal as an admission against interest, the statement of the agent with respect to the principal's affairs must be made, first, with respect to matters within the scope of the agent's authority. The term "authority" thus employed, signifies the same as it does when employed with reference to the agent's act or contract. Therefore, when admissions in proof are made by one who either had no authority at all, or had no authority to represent the principal in the matters concerning which the admissions were made, they avail nothing for the purpose suggested. Second, the admissions must be made with reference to the subject matter of the agency. Mere statements of the agent having no legitimate reference to or bearing upon the business

committed to him, cannot be imputed to the principal. And third, the admissions must have been made by the agent at the time of the transaction, either while he was engaged in the performance or so soon thereafter as to be in reality a part of the transaction.    Or in other words, the admissions must have been a part of the *res gestae.*    [Mechem on Agency, sec. 714; Midland Lumber Co. v. Creeger, 53 Mo. App. 418; 1 Am. and Eng. Ency. Law (2 Ed.), 690, 698.]

The court also gave on the part of plaintiff, instruction number 8, as follows:

"The court instructs the jury that although you may believe from the evidence that the trust deed executed by defendant to her daughter, Laura, was in good faith and to secure a debt due from defendant to her daughter, yet if you further believe that the debt secured thereby was afterwards settled and that the deed of trust has served its purpose as security for the debt therein mentioned and the defendant allowed the deed of trust to remain unsatisfied of record with the view of having it continue apparently a live instrument to cover the property described therein, then it was a fraudulent concealment of the property under the statute and your verdict will be for the plaintiff."

It appears that in January before, the defendant had executed a deed of trust on the property afterwards sold to Wilson, purporting to secure an indebtedness of $1,700 in favor of her daughter, Laura, and that this deed of trust was released on the 15th day of July; that is, at the time the sale of the property to Mr. Wilson was finally consummated.    There is no word in the proof tending to show whether this deed was made in good faith or bad faith, or whether she owed, or did not owe, her daughter Laura the $1,700 therein mentioned.    The case is devoid of proof tending to show that the indebtedness was afterwards settled and the deed of trust permitted to remain on rec-

ord unsatisfied, apparently a live instrument, for the purpose of concealing defendant's true interest in the property, as suggested by the instruction. In the absence of proof to the contrary, the law presumes the deed of trust was a valid instrument, executed in good faith, to secure the indebtedness mentioned therein. In these circumstances the error of the instruction is obvious for two reasons; first, there were no facts on which to predicate the doctrine there asserted, and second, it served to impute bad faith to the defendant with respect to the transaction evidenced by the deed of trust, when there were neither facts nor circumstances developed in the case tending to overcome and remove the presumption of good faith referred to. This was error.

It is unnecessary to notice other arguments advanced for a reversal of the judgment. It appears the errors in the two instructions referred to were highly prejudicial. The judgment should be reversed therefor and the cause remanded. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.