Nancy J. SCHLINGMAN
(Reed), Respondent,

v.

Joe Jimmie REED, Reed & Reed
Enterprises, Inc., Appellants.

No. WD 39701.

Missouri Court of Appeals,
Western District.

March 22, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 3, 1988.

Application to Transfer Denied
June 14, 1988.

Dennis G. Muller, Kansas City, for appellants.

Joseph Y. DeCuyper, D. Bryant King, III, Kansas City, for respondent.

Before GAITAN, P.J., and TURNAGE and CLARK, JJ.

GAITAN, Presiding Judge.

Appellant/garnishee, Reed & Reed Enterprises, Inc., appeals from final money judgments rendered on June 10, 1987, and July 8, 1987, in garnishment proceedings instituted by plaintiff/respondent, Nancy Schlingman, on her money judgment against defendant, Joe Jimmie Reed, for recovery of $27,705.93. Appellant claims the judgments are premature and invalid because the trial court entered the judgments against the garnishee without first entering orders directing the garnishee to pay into court the amounts due as required by Rule 90.17. We affirm.

On October 19, 1972, Nancy Schlingman (Reed) and Joe Jimmie Reed entered into a property settlement agreement. On August 5, 1985, Ms. Schlingman filed her petition for damages resulting from Mr. Reed's failure to perform on this agreement. The court appointed a special process server who, on August 21, 1985, personally served upon Joe Jimmie Reed a summons and copy of the petition. Mr. Reed failed to answer or appear and the trial court entered a default judgment for plaintiff in the amount of $27,705.93 on October 16, 1985.

At the time that Ms. Schlingman filed her petition for damages against Joe Jimmie Reed in August of 1985, Mr. Reed was the president and sole shareholder of Reed & Reed Enterprises, Inc.. On August 23, 1985, two days after being served with Ms. Schlingman's petition for damages, Mr. Reed instructed his attorney to transfer the corporation's stock certificates from Joe Jimmie Reed to Joe Jimmie Reed and Kathy Reed as tenants by the entirety. The stock was transferred in September, 1985.

Pursuant to the judgment entered on October 16, 1985, Ms. Schlingman filed a garnishment on June 3, 1986, to be served on Reed & Reed Enterprises, Inc. for any and all wages, stock dividends, or compensation of any kind due and owing Joe Jimmie Reed. Ms. Schlingman mailed her interrogatories to garnishee, Reed & Reed Enterprises, Inc., on September 8, 1986. Garnishee answered, denying that any monies were owed to Joe Jimmie Reed by way of wages or other compensation, and specifically stated that the:

> [o]nly monies that have been paid to the Respondent have been dividends paid on shares on common stock held by Mr. Reed and his wife, Kathy Reed, as tenants by the entirety. Dividend checks were paid jointly to Joe Reed and Kathy Reed as tenants by the entirety.

In accordance with 525.190, RSMo 1986, plaintiff's denial of garnishee's answers was filed on September 26, 1986. In her denial, Ms. Schlingman alleged that Reed & Reed Enterprises, Inc. was only paying Joe Jimmie Reed in the form of stock dividends as opposed to salary in order to prevent Ms. Schlingman from being able to garnish Mr. Reed's salary, and the transfer of stock from Joe Jimmie Reed to Joe Jimmie Reed and Kathy Reed as tenants by the entirety was made to defraud Ms. Schlingman by preventing her from being able to garnishee the property.

The court heard evidence on March 21, 1987, and on June 10, 1987, entered its final

judgment and order. The court found that the transfer of stock was "done with the intent to hinder, delay and defraud Plaintiff, Nancy J. Schlingman (Reed)." It also found that, during the period of garnishment, Reed & Reed Enterprises, Inc. paid dividends in the amount of $6,000 to Joe Jimmie Reed and Kathy Reed. The court therefore ordered Reed & Reed Enterprises, Inc. to pay Ms. Schlingman $6,000 plus costs.

On July 7, 1987, the court heard evidence concerning a second garnishment which was served on Reed & Reed Enterprises, Inc. on December 9, 1986, with a return date of February 20, 1987. On July 8, 1987, the court entered a second final judgment and order directing Reed & Reed Enterprises, Inc. to pay Ms. Schlingman $5,000, based on its finding that $5,000 in dividends had been paid to Joe Jimmie Reed and Kathy Reed on the fraudulently transferred stock during the second garnishment period. On July 20, 1987, Reed & Reed Enterprises, Inc. filed its Notice of Appeal from the final judgments recorded on June 10, 1987 and July 8, 1987.

Rule 90.17 sets forth the procedure for entering a judgment against a garnishee:

90.17 Judgment in Garnishment

The court or jury shall find what property subject to garnishment was attached or the value thereof. The court shall order that such property be delivered to the officer or paid into court within such time as the court shall direct. If such property is not delivered within such time, the court shall enter judgment against the garnishee for the value of the property.

This is essentially the same procedure prescribed by § 525.200, RSMo 1986:

If, upon such trial, it shall appear that property, effects, or money of the defendant are found in the hands of the garnishee, the court or jury shall find what property or effects, and the value thereof, or what money are in his hands, and unless he discharge himself, as provided in section 525.070, by paying over or delivering the same to the sheriff, or unless he shall, within such time as the

court shall direct, as provided in section 525.080, pay or deliver up such property, effects or money, or shall execute his bond for the payment or delivery thereof, then the court shall enter up judgment against the garnishee for the proper amount or value as found in money, and execution may issue forthwith to enforce such judgment.

Thus under both Chapter 525 and Rule 90.17, the court shall find what property is held by the garnishee and its value, enter a pay-in order, and if not paid or delivered, enter a judgment against the garnishee for the proper amount or value.

In the present case, the trial court entered its final judgments against Reed & Reed Enterprises, Inc. without first ordering Reed & Reed Enterprises, Inc. to pay into the court the property held by the corporation or its value. Appellant contends the judgments should be reversed because the trial court's failure to issue interlocutory pay-in orders renders its final judgments premature.

It is well established that garnishment procedures are to be strictly followed. See, e.g., *Landmark Bank of Ladue v. General Grocer Corp.*, 680 S.W.2d 949, 953 (Mo.App.1984); *Walkeen Lewis Millinery Co. v. Johnson*, 130 Mo.App. 325, 109 S.W. 847, 849 (1908). Furthermore, the requirement that a garnishee be required to pay in property or the value into the court prior to final judgment had been held to be an absolute requirement. *See, e.g., Seiter v. Tinsley*, 479 S.W.2d 217 (Mo.App.1972); *Linenschmidt v. Continental Casualty Co.*, 356 Mo. 914, 204 S.W.2d 295, 297 (1947). This is so because the statute contemplates that

the garnishee is a disinterested third party, a mere stakeholder, who has no interest in the controversy between the plaintiff and defendant. [citation omitted]. Hence it is manifestly the purpose of our statute that he shall be subjected to the last possible inconvenience with respect to the fund garnished compatible with the administration of complete justice between the real parties in interest. To that end, therefore, the garnishee may

acquit himself of all manner of responsibility without judgment or costs authorized to be taxed against him in some circumstances [citation omitted], the legislative authority justly ... authorized judgment and execution only after the garnishee had neglected or refused to obey the order of the court in that behalf.

*Walkeen Lewis Millinery Co. v. Johnson,* *supra,* 109 S.W. at 849. In the present case, however, the garnishee, Reed & Reed Enterprises, Inc. is no "mere stakeholder".

■ The trial court found, and appellant/garnishee does not dispute, that the transfer of stock from Joe Jimmie Reed to Joe Jimmie Reed and Kathy Reed as tenants by the entirety was made and contrived with the intent to defraud Ms. Schlingman of recovery on her judgment. Every conveyance of goods or chattels made with an intent to hinder, delay or defraud creditors is deemed to be "clearly and utterly void." Section 428.020, RSMo 1986. *See also Lindell Trust Co. v. Commonwealth Land Title Insurance Co.,* 611 S.W.2d 283, 286 (Mo.App.1980). Thus the transfer of stock was a nullity.

■ Prior to the fraudulent transfer of stock to Joe Jimmie Reed and Kathy Reed as tenants by the entirety, Joe Jimmie Reed was the president and sole shareholder of Reed & Reed Enterprises, Inc.. Implicit in the trial court's order is its determination that this closely held corporation is, in effect, the "alter ego" of Joe Jimmie Reed. Under the alter ego or instrumentality rule, when a corporation is really indistinct from the person controlling it, then the corporate form may be disregarded if to retain it would result in injustice. *Krajcovic v. Krajcovic,* 693 S.W.2d 884, 887 (Mo.App.1985). Moreover, a court may, in its equitable powers, "disregard the separate legal entity of the corporation and the individual where the separateness is used as a subterfuge to defraud a creditor." *Community Federal Savings & Loan Association v. Boyer,* 710 S.W.2d 332, 334 (Mo.App.1986). Accordingly, the trial court could, and implicitly did, find that Reed & Reed Enterprises, Inc. was not

a disinterested third party, but rather a party whose interest coincided with that of Joe Jimmie Reed, the judgment debtor.

Under these circumstances, it was not error for the court to enter its final orders without first requiring Reed & Reed Enterprises, Inc. to pay the amounts due plaintiff into court. Having determined that the separate corporate existence of Reed & Reed Enterprises, Inc. should be ignored, the trial court properly treated Reed & Reed Enterprises, Inc. as the judgment debtor, lifting the corporation from the operation and protection of the statute's pay-in provision and proceeding to direct execution on the judgment.

■ In its second point, appellant/garnishee argues that the endorsement by its attorney of "Approved as to Form" at the foot of the entry prepared and filed to show a final judgment rendered against the garnishee did not constitute consent to proceed to final judgment without an interlocutory pay-in order. We agree.

As appellant/garnishee points out in its brief, the mere endorsement by counsel for the losing party of approval as to form of a proposed decree only evidences acknowledgement that the proposed decree accurately embodies the decision or judgment of the trial court; it does not evidence agreement with or consent to the validity of the decision or judgment. Conversely, a judgment does not depend upon counsels' approval as to form for its validity or binding effect. Since we have concluded that the judgment and order of the trial court are proper, the point is denied.

The judgment of the trial court is affirmed.

All concur.